Thank you, Your Honor. May it please the Court, my name is David McCauley and I represent the petitioner, Mr. Alejo Ganut. One issue that is raised in our pleadings has been addressed, although not in published decisions, already in previous cases concerning members of the Marcos entourage who came in with Mr. Ganut. Mr. Ganut You know you're not allowed to cite unpublished dispositions. It's precedent. David McCauley No, I'm certainly not doing that. What I'm saying is that we're not going to, I'm not going to press argument on the issue of whether Mr. Ganut was paroled or properly placed in exclusion proceedings because we already know the Court's position on that from previous, albeit unpublished, cases. I guess the real issues that remain are what the viability of Mr. Ganut's claim that the or what today would be called removal proceedings, based upon the representations, as he understood, as to what his status would be in the United States. Now, admittedly, under U.S. immigration law, he was brought in what's considered parole status. But as a layperson, in fact, I think probably even for most practicing attorneys, unless they specialize in the field of immigration law, the entire concept of parole is somewhat arcane and a sort of legal fiction because it allows a person to essentially to be here without being here. And I think any layperson would have the same understanding that Mr. Ganut had, that he was here at the, we could say the invitation, there's also an argument that it was closer to kidnapping, but that it was at the behest of the United States government as a result of actions and representations made by the United States government, that he came to be here in the first place. As far as misconduct on the part of the United States government, we would argue that the manner in which he was brought here certainly constituted affirmative misconduct. And under our international treaty obligations, in particular the UN Charter, our intervention in the affairs of another country deposing effectively its government is a violation of our treaty obligations and constitutes affirmative misconduct in that respect. I realize that in that same context the court must deal with the political question document. But how do you get, just to go back to one of your earlier statements, how do we, in terms of equitable estoppel, it may have been some affirmative misconduct, but when your client asked the government to bring over his family on the same parole status that he has, it seems to me that indicates a fair understanding of what his status was and a lack of detrimental reliance. How do you deal with that? Well, the question is, again, whether in fact anyone at the time in Mr. Gunny's position, for that matter any of the other members of what's been known as the Marcos Entourage, really had any concept of what it meant to be here on parole status. I mean, the government certainly knew, but I don't think it was ever made clear to them, and they have all testified that it was never made clear to them, that this in some sense was temporary, could be temporary. Interestingly enough, even the youngest of the children was given a form of authorization. They were told you can travel in and out of the United States. They were given to understand they could live here, work here, and that in fact is what they did in reliance upon the representations that at least they understood had been made to them. They gave up their lives back in the Philippines. They've now, you know, Mr. Gunny and his family members who are now no longer part of this case, have been here since 1986, you know, they gave up all of their ties to the Philippines in terms of their employment and their, you know, their lives there, and they started new lives in this country. And then six years after they were well into those new lives, they were told, well, your parole status is now being terminated. And... So what's your argument on affirmative misconduct? I gather, I initially thought it was in taking them from the country. From your argument today, it seems as though you're saying you're not explaining to them what the parole status meant. Well, it would encompass all of those things, Your Honor, because... I'm not sure that that rises to the legal status, though. Inadequate explanations by institutions generally don't constitute affirmative misconduct in our case. This is correct, that the matter in which they were taken from the Philippines, with the understanding that they were being flown to Marcos' home province of Ilocos Norte, and then a few hours later, when the plane still hasn't landed, it perhaps begins to dawn on them that maybe that's not where we're going after all. And they were... Now, the government's position is, well, they should have complained about that. I don't think they were in a position to complain about that. They were here, they were on that plane as part of President Marcos' group, although none of them had been asked if, you know, if they wanted to go to the United States. None of them had been told where they were going. In fact, they were given the even more implausible story that Clark Air Force Base had been surrounded by members of the New People's Army, and that the U.S. military could not protect them, and that therefore they had to get on the planes. So they were given what would certainly appear under the circumstances to have been a false, if not fraudulent, and misleading story in order to get them on the planes. The planes took off, and the next thing you know, they're landing in Guam on the way to Hawaii. And that's the strongest element of affirmative misconduct. I certainly agree with Your Honor that the government cannot be held responsible, certainly in terms of affirmative misconduct, for misstatements or misrepresentations or the failure to advise on the part of an immigration service officer. So we would ask the court to continue to address the issue of whether the government need be stopped in this case. But perhaps the more important issue is the validity of Mr. Ghanou's asylum claim today. Now, it's been seven years since his hearing. Let me just see if I understand. Your basic claim is that they took him against his will, basically, because he didn't know he was being taken to the United States. But you don't claim that he was prevented from leaving here the next day or any other time, do you? No, I don't. So, is it your position that because they brought him here on a temporary basis and paroled him, that that entitled him to stay permanently? He and other members of the entourage were under the impression, which was never dispelled, that they were indeed entitled to stay here on a permanent basis. As it turns out, their understanding of the law in that respect was wrong. But their understanding nevertheless stands. But they did know they were free to leave. I am not sure how they were advised in that regard, although it's my understanding they were told that you can come and go from the United States. So that being the case, they would have understood they were free to leave. With regard to the validity of his asylum claim, the concerns Mr. Gannute has as to the individuals that would be persecuting him because of his relationship with the Marcos group or his political opinion as a Marcos supporter, and as Immigration Judge Diaz noted in her decision, his relationship to President Marcos was a very close relationship. He isn't one of those who was somewhat remotely affiliated with the late president. And we had asked the court or suggested the court my wish to remand the matter to the board for consideration of the current situation in the Philippines. That was opposed by the government on the grounds that it should first have been addressed administratively through a motion to reopen. There is really no such thing in the Board of Immigration Regulations as a motion to remand. But the regulation that provides for a motion to reopen to assert an asylum claim, which is the regulation upon which the government relied, is where you want to assert there have been changed circumstances so that you now have a claim for asylum which you did not have. And what we were trying to point out was not changed circumstances so it doesn't fall within the ambit of that regulation. The standard motion to reopen requires that it be done within 90 days, and much more than 90 days has passed. But the issue was that the conditions that are obtained in the Philippines today are just as dangerous for Mr. Gunu as they were when he initially asserted his asylum claim, and that that's evidenced by the current activities in particular of the New People's Army, which has declared as its targets those supporters of President Marcos, and that would certainly include Mr. Gunu. So there are the two issues that we laid before the Court, the issue of estoppel, whether that remains a valid concern and or a valid claim, and whether or not Mr. Gunu's claim for asylum continues to be valid under conditions in the Philippines today. Thank you. May it please the Court. Good morning. My name is David McConnell. I'm here this morning representing the Attorney General of the United States. Your Honors, in light of Mr. McCauley's concession that Mr. Gunu was properly placed into exclusion proceedings, I'll confine my Your Honors, there's no question that Mr. Gunu was brought here as part of the entourage that surrounded former President Marcos of the Philippines. This has been characterized here today as a kidnapping. I think the record more accurately shows it to be in the nature of a rescue from the Philippines. The record clearly shows that the Marcos regime was crumbling. It's a well-known historic fact that the Marcos regime was crumbling in February of 1986. Mr. Marcos was brought here. His entourage was allowed to enter the United States with him or allowed to come to the United States with him, and they were granted, of course, immigration parole. Well, this is what I find a little bit unusual about the case, because I gather the position of the United States is that if the rescue had not been undertaken, they all would have been killed, right? I don't know that that's the case, Your Honor, but it certainly seems as though the record indicates that the Marcos Palace was under attack. There's testimony of a threat against Mr. Marcos at that time. So, indeed, you can conclude that the party was in grave danger, if not likely to be killed. So why isn't that a past persecution? I don't know. I've never heard a concession that somebody was rescued by the United States because they were about to be killed. And at the same time, it wasn't a past persecution, Your Honor, because this was in the middle of a revolution. This was in the middle of a military coup. Well, isn't your defense then change country conditions rather than saying there's no past persecution? Well, I think that was clearly the judgment made by the immigration judge in the case, that there was no viable claim to asylum at this time. Right, but that was what the BIA said. Well, the BIA adopted... The BIA didn't reach the question of change country conditions. Well, I think the BIA adopted the immigration judge's findings with respect to asylum, Your Honor, in the first paragraph of this decision. The asylum claim was denied by the immigration judge because there was no compelling evidence that any supporter of Mr. Marcos would be in any danger upon returning to the Philippines at that time. And the judge cited the evidence or the case of Imelda Marcos, who in fact had been returned to the Philippines. I understand that argument, but I mean, the BIA says that he's not satisfied burden for the judge to suffer past persecution. So if that's wrong and he's entitled to a presumption, then that has to be remanded to at least consider change country conditions. I don't mean to gas you, but it just seems to me it's an odd case where everybody says, well, the Marcos regime was crumbling, the NPA was on them, that there was a revolution, their lives were in danger, and we had to rescue them, we had to fly them out of here, we decided it wasn't safe for them to return, but there's no past persecution. The rescue was not, the United States government didn't affect the rescue to rescue Mr. Gannut. They affected the rescue to rescue Mr. Marcos. The fact that the regime was crumbling around the Marcos, around President Marcos, I don't think was past persecution directed specifically at Mr. Gannut. If anything, the past persecution claim would be that of Mr. Marcos. But I don't think there's even been a claim that that specific act in the case, that the attack on the palace, the need to rescue the Marcos family, that that gives rise to past persecution. I don't think any of the claims were made in this case that the attack and the revolution was past persecution directed at Mr. Marcos. And I think that the law is very clear that someone has to be singled out for persecution, and this was, again, we're in the middle of a revolution at the time in the Philippines. Well, it's out of context that this individual was clearly identified as a, with Marcos, as one of the people close to him. And a revolution can put you in danger because of your political opinion. That's what a revolution's about. It's about your political views. And it does seem that there were significant threats to his life going on at the time he was rescued because of his political affiliation. Well, I don't know that it was his political affiliation, but it was his employment relationship with President Marcos that put him in jeopardy along with the rest of the Marcos family and Marcos' entourage. Again, I don't think, Your Honor, this is a claim that's been made in the case that that particular act was an act of past persecution, that the danger that that party was in at the time of the revolution was past persecution. But I think Thomas is correct that even if you could consider that to be past persecution, the immigration judge found in this case that there's no evidence of any ongoing danger to Marcos' family or its entourage in this case. Well, he did. But what Thomas said is that the DIA's decision says he has not shown that it's past persecution. Your Honor, again, that's true. The immigration judge did not make a finding on that point. But again, I don't think that that was a contention raised before the immigration judge that Mr. Marcos was past persecution at that time. In fact, nothing happened to him. Because of the intervention of the U.S. government, he was removed before any harm befell him. Merely being employed with President Marcos, I don't think is subject to him past persecution. I mean, you put him in danger because the government was crumbling around him, and the political condition was volatile at the time. But again, there's no claim made in the case that that specific act constituted past persecution. Well, I guess the stopping point for me was I do recognize what the immigration judge did. The DIA didn't use the phrase change country conditions, which it usually does, but really it's relying on that. The immigration judge didn't seem to say change country conditions, although I think it's a proper inference from what he's saying. Well, Your Honor, the immigration judge wouldn't, I don't think. Unless he made a finding that past persecution occurred, and he clearly did not in the case, he wouldn't specifically cast it that way. But he analyzed the past country conditions evidence to determine whether the claim of a well-founded fear of future persecution continued to be well-founded, whether there was any objective reasonableness to it. And he clearly made a finding that there was no objective reasonableness to the claim in light of the fact that there was no evidence, compelling evidence anywhere, that Marcos supporters were having problems when they returned to the Philippines. And, of course, he cited the example of Imelda Marcos herself. I have only a couple minutes remaining. Unless the Court were to have any questions about the Estoppel claim, clearly the government does not believe that this is a viable claim to Estoppel. The entourage, including Mr. Gnupp, were brought here, admitted to the United States with a grant of parole for humanitarian reasons. They were informed in 1992 that the purpose of the parole was over because President Marcos had died and Imelda Marcos had returned. As Your Honors indicated, there's no evidence in the record that Mr. Gnupp was ever prevented from returning. In fact, it seems very clear that almost from the beginning his intention, his desire, was to stay in the United States. He almost immediately asked for his family to be brought here. He's not arguing, I don't think, that he was never told about his parole status. I think he's arguing more accurately that he wasn't aware that that parole status would require him to ultimately leave if that status were revoked. But that lack of knowledge doesn't change anything, Your Honor. Under the law, parole has been revoked, and the law is very clear that a person is then to be treated as an applicant for admission. So the exclusion order was properly answered in the case, and I would ask the Court to sustain that order. Thank you. Any other questions? Is there any rebuttals? The record does, in fact, include evidence of the threats to Mr. Gnupp's life as well as to his family armed with him coming to their homes, and we would submit that that is probably one of the reasons why he wanted to get his family out of the Philippines and didn't go back. And he is also arguing in his testimony that with regard to the fact that Imelda Marcos and the family were able to go back to some degree of safety, that they are extremely wealthy and traveled with an entourage of bodyguards pretty much at all times. Mr. Gnupp and his family, unfortunately, couldn't afford that. And as to the on-account-of issue for asylum, it can be on account of political opinion or of the imputed political opinion or membership in a social group, and we would submit that all of those fit in this particular case, as he was part of the Marcos entourage. Thank you. Thank you. Thank you. Both cases will be submitted. The next case on the calendar is Young v. JTD Corporation. Good morning. Good morning, Your Honor. Mr. Young? Yes. For the record, my name is Wayman Young.
judges: Browning, Reinhardt, Thomas